**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

FILED ___ ENTERED
LOGGED ___ RECEIVED

JAN 2 3 2024

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND                    DEPUTY

Bart Butler,

Permits Express USA LLC,

                    **Plaintiffs,**

      vs.

Micheal Rothstein,

Custom Construction of Carroll County
LLC,

Kelli Shockey,

                  **Defendants.**

Case Number:

BY

24 CV 0218
JRR

COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF

Demands for Jury Trial

## VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

**COMES NOW** Plaintiffs **Bart Butler** and **Permits Express USA LLC,** bring this action against the above Defendants; Plaintiffs allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to themselves.

### 1. INTRODUCTION

1.      This legal proceeding is initiated against Micheal Rothstein, Custom Construction of Carroll County LLC, and Kelli Shockey, alleging declaratory judgment, breach of contract, fraudulent misrepresentation, unfair business practices, and associated claims stemming from a business association between Bart Butler and the aforementioned parties. Through this

legal action, Bart Butler and Permits Express USA LLC are pursuing declaratory relief, compensatory damages, punitive damages, as well as attorney's fees and costs.

2.      Defendants' acts and practices, as described herein, constitute unlawful, fraudulent, or unfair business practices in that: (1) Defendants' actions violate numerous statutes as outlined in this Complaint; (2) the justifications for Defendants' conduct are outweighed by the gravity of the consequences to the Plaintiff; (3) Defendants' conduct is immoral, unethical, oppressive, unconscionable, or substantially injurious to the Plaintiffs; and/or (4) the uniform conduct of Defendants have a tendency to defraud and cause financial loss to the Plaintiffs.

## 2. PARTIES, JURISDICTION, AND VENUE

3.      This is an action, including counts for breach of contract, breach of the duty of good faith and fair dealing, fraud and fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment for damages in excess of $75,000.00, inclusive of attorney's fees and costs.

### 3. PARTIES

4.      Plaintiff, Bart Butler (**Mr. Butler**), at all relevant times, is an individual and resides in OWINGS MILLS, MD, 21117. Mr. Butler is a party to certain agreements with or relating to the Defendants. Mr. Butler is the CEO and President of Permits Express USA LLC.

5.      Plaintiff, Permits Express USA LLC (**Permits Express**), at all relevant times is an incorporation company in Maryland. Permits Express a party to certain agreements with or relating to the Defendants.

6.      Defendant Custom Construction of Carroll County LLC (**Custom Construction**) at all relevant times is an incorporation company in Maryland and can be served at its Registered Agent address- Suite 102, Baltimore MD 21208. Custom Construction is a party to certain agreements with or relating to Plaintiffs.

7.    ~~Plaintiff~~ *Defendant*, Micheal Rothstein (**Rothstein**), at all relevant times, is an individual and resides in 1100 Business Parkway South Westminster, MD 21157. Rothstein is a party to certain agreements with or relating to Plaintiffs.

8.    ~~Plaintiff~~ *Defendant*, Kelli Shockey (**Shockey**), at all relevant times, is an individual and resides in 137 National Plaza Suite 300 National Harbor MD 20745. Shockey is a party to certain agreements with or relating to Plaintiff.

## 4. JURISDICTION AND VENUE

9.    This Court is vested with jurisdiction over the Defendants because the Defendants' conduct occurred within the State of Maryland and in this District. Furthermore, the acts giving rise to Plaintiffs' claims occurred, among other places, in this District.

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

11.    Plaintiffs have suffered damages in excess of $75,000.00.

12.    Venue is proper in this District because Defendants do business in this District, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

13.    Defendant Custom Construction being a Corporate Defendant is liable for its employees' actions and conduct under the legal doctrine of "*Respondeat Superior*" its employees' unlawful acts and conducts took place during the hours they were, in fact, working for the Corporate Defendant.

14.    An actual case or controversy has arisen between the parties.

15.     Plaintiffs have been injured by Defendants' conduct and has suffered damages resulting therefrom.

16.     All conditions precedent to this action have been performed, satisfied, or waived.

## 5. FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17.     In late/mid-Summer 2022, Plaintiff, [Mr. Butler], the CEO and President of Permits Express USA LLC,  a reputable provider of permit expediting services, was approached by William Shockey, acting as an agent for Michael Rothstein and Custom Construction. Mr. Shockey sought the services of Mr. Butler for the rehabilitation of 24 properties situated in Baltimore City, MD.

18.     During initial discussions, Mr. Shockey, on behalf of Michael Rothstein and Custom Construction , did not disclose that the primary purpose of these rehabilitations was to convert the properties into "group homes." However, crucially, this information was intentionally withheld from Mr. Butler and was not initially known to him. This nondisclosure proved to be pivotal, as it directly contradicted the initially agreed-upon scope of work and significantly affected the nature of the permit expediting services sought.

19.     Subsequent to the revelation of the intended use, negotiations ensued between Mr. Butler and the Defendants. Despite the standard industry fee for such an extensive scope of work amounting to $24,000, the parties reached an agreement to proceed at a flat fee of $10,000. This discounted fee failed to reflect the increased complexity and regulatory challenges associated with the true nature of the rehabilitation projects. Attached herewith is the agreement delineated as **Exhibit A.**

20.     In good faith, Mr. Butler commenced the permit expediting work promptly after the fee agreement was settled. Over the following 8-9 months, Mr. Butler diligently navigated the intricate permitting process, successfully securing approvals for 23 out of the 24 properties.

21.     Complicating the engagement, one permit became the subject of adjudication due to issues stemming from undisclosed prior work. This work fell outside the scope of Mr. Butler's engagement and required additional time and resources to resolve, underscoring the Defendants' failure to provide complete and accurate information.

22.     Prior to Mr. Butler's involvement, Kelli Shockey, an agent of Defendants, had applied for demolition permits, initiated work beyond the permitted scope, and subsequently received a "cease and desist" order on several properties. This unauthorized work created a crisis that compelled Mr. Butler to intervene and successfully rectify permit issues on all affected properties, including those subjected to fines.

23.     As the engagement progressed, the professional relationship between Mr. Butler and Mr. Rothstein became strained. Toward the conclusion of the project, communications became increasingly contentious and combative, impeding the efficient resolution of outstanding matters and creating an unnecessarily hostile working environment.

24.     The true nature of the rehabilitated properties as "group homes" came to light only towards the end of the engagement, representing a deliberate concealment of crucial information by the Defendants. This intentional nondisclosure rendered irrelevant certain aspects of the permit expediting services that had been initially agreed upon.

25.     Despite Mr. Butler's unwavering commitment and the successful completion of the permit expediting services, Defendants failed to uphold their contractual obligations. Their uncooperative behavior, combined with the intentional withholding of material information, resulted in financial losses, reputational damage, and undue strain on Mr. Butler's business operations.

26.     Throughout the engagement, Mr. Butler operated under the belief that the rehabilitation projects were conventional residential endeavors. The intentional nondisclosure of the true intended use as "group homes" undermined the foundation of trust upon which the

contractual relationship was established. This material misrepresentation substantially altered the parameters of the contracted work, exposing Mr. Butler to unforeseen challenges.

27.     The negotiated flat fee of $10,000, significantly below the standard industry rate, failed to account for the additional complexities inherent in the rehabilitation of properties intended for use as "group homes." Defendants, aware of the true nature of the projects, took advantage of this lack of information, placing an undue financial burden on Mr. Butler and his business.

28.     Mr. Butler's successful acquisition of approvals for 23 out of the 24 permits demonstrated his commitment to fulfilling the contractual obligations. However, the adjudication of one permit due to undisclosed prior work underscored the Defendants' failure to provide accurate and comprehensive information, resulting in a deviation from the initially agreed-upon scope of work.

29.     Defendants' acts were intentional and proximately caused Plaintiff to suffer financial loss.

30.     As a result of the acts and conducts allege above, Plaintiff has endured fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury, including lost business profits.

31.     Defendants' actions were intentional, malicious, willful, wanton, and callous, and showed reckless disregard for Plaintiff's rights.

## COUNT I

### (Breach of Contract)

### Against all Defendants

32.     Plaintiffs hereby re-allege paragraphs 1 through 31 as if specifically set forth.

33.      Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (Bankr. D. Md. 2015) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 17 A.3d 744, 749 (2011)). To "prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001*); accord Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015); see *also RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010).

34.      The plaintiffs entered into an agreement with the defendants, as evidenced by Exhibit A, wherein the defendants engaged the plaintiffs' permit expediting services for the rehabilitation of 24 properties in Baltimore City.

35.       The initial discussions, negotiations, and subsequent agreement established a clear contractual obligation between the plaintiffs and the defendants.

36.       The intentional nondisclosure by the defendants regarding the true purpose of the rehabilitation projects, i.e., converting the properties into "group homes," constituted a breach of the initially agreed-upon scope of work.

37.      The failure to disclose information regarding prior unauthorized work and the resultant "cease and desist" order further demonstrates the defendants' failure to provide complete and accurate information, causing a deviation from the agreed-upon scope of work.

7

38.     The plaintiffs suffered financial losses, reputational damage, and undue strain on their business operations due to the defendants' uncooperative behavior, intentional withholding of material information, and intentional acts that deviated from the agreed-upon scope of work.

39.     The intentional nondisclosure of the true nature of the rehabilitation projects as "group homes" substantially altered the parameters of the contracted work, exposing the plaintiffs to unforeseen challenges and financial burdens not contemplated in the agreed-upon fee of $10,000.

40.     The intentional nondisclosure of material information, intentional acts leading to a crisis, and deliberate concealment of the true nature of the rehabilitated properties demonstrate the defendants' willful and wanton conduct.

41.     The intentional, malicious, and reckless disregard for the plaintiffs' rights, as alleged in paragraphs 29 and 31, further supports the argument for a breach of contract.

42.     Although the plaintiffs have demanded that Defendants perform all obligations under the contract, Defendants failed, refused, and continues to fail and refuse to take any steps necessary to fully and completely fulfill their obligations and duties in the contract.

43.     Plaintiffs have been damaged in the amount to be proven at trial as a result of the Defendants' breach of the contract.

44.     Plaintiffs' damages are ongoing and increasing as a result of Defendants' breach of the contract.

## COUNT II

### (Negligent Misrepresentation)

### Against all Defendants

45.    Plaintiffs hereby re-allege paragraphs 1 through 31 as if specifically set forth.

46.    The Maryland Court of Appeals set forth the elements of a claim for negligent misrepresentation under Maryland law: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. Id. at 136, 916 A.2d at 273 (citations and internal quotation marks omitted). Numerous Maryland cases are to the same effect. See, e.g., *Blondell*, 413 Md. at 119, 991 A.2d at 94; *Griesi v. Atlantic Gen'l Hosp. Corp.*, 360 Md. 1, 11, 765 A.2d 548, 553 (2000); *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999); *BG & E v. Lane*, 338 Md. 34, 43, 656 A.2d 307, 311 (1995).

47.    The defendants, as parties engaging in contractual negotiations, owed a duty of care to provide accurate and complete information regarding the nature and scope of the rehabilitation projects. Despite this duty, the defendants intentionally withheld information about the true purpose of the projects, namely, the conversion of the properties into "group homes."

48.    The defendants, through their agent William Shockey, negligently asserted a false statement by not disclosing the primary purpose of the rehabilitation projects. This nondisclosure proved pivotal as it contradicted the initially agreed-upon scope of work and significantly affected the nature of the permit expediting services sought.

49.    In initial discussions, Mr. Shockey, on behalf of the defendants, did not disclose that the

rehabilitation projects were intended for use as "group homes." This intentional nondisclosure amounted to a negligent assertion of a false statement regarding the nature of the properties.

50.     The defendants, through their actions, intended that the false statement regarding the purpose of the rehabilitation projects would be acted upon by the plaintiffs. The intentional nondisclosure during the initial discussions and negotiations demonstrates this intent.

51.     The intentional nondisclosure of the true purpose of the projects during negotiations indicates that the defendants intended the plaintiffs to proceed with the permit expediting services without full knowledge of the complexities involved.

52.     The defendants had knowledge that the plaintiffs, including Mr. Butler, would probably rely on the information provided during negotiations. The nondisclosure of crucial information significantly impacted the nature of the permit expediting services sought.

53.     The intentional nondisclosure of prior unauthorized work and the resultant "cease and desist" order by Kelli Shockey, an agent of the defendants, demonstrates the defendants' knowledge that the plaintiffs would rely on the information provided, leading to potential regulatory challenges.

54.     The plaintiffs, justifiably relying on the incomplete and inaccurate information provided by the defendants, took action by entering into an agreement and commencing permit expediting work based on the initial understanding of the rehabilitation projects.

55.     For example, Mr. Butler commenced the permit expediting work promptly after the fee agreement was settled, operating under the belief that the rehabilitation projects were conventional residential endeavors.

56.     The plaintiffs suffered damage, including financial losses, reputational damage, and undue strain on business operations, proximately caused by the defendants' negligence in

failing to provide complete and accurate information regarding the true nature of the rehabilitation projects.

57.       Despite Mr. Butler's successful completion of the permit expediting services, the intentional nondisclosure of the true nature of the projects and the defendants' uncooperative behavior resulted in financial losses, reputational damage, and undue strain on Mr. Butler's business.

58.       Plaintiffs have been damaged in the amount to be proven at trial as a result of the Defendants' Negligent Misrepresentation.

59.       Plaintiffs' damages are ongoing and increasing as a result of Defendants' Negligent Misrepresentation.

## COUNT III
### (Fraudulent Misrepresentation)
### Against all Defendants

60.    Plaintiffs hereby re-allege paragraphs 1 through 31 as if specifically set forth.

61.    In an action for fraudulent misrepresentation, which is the garden variety of fraud and is often described simply as "fraud," the plaintiff ordinarily must show: 1) that the defendant made a false representation to the plaintiff; 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; 3) that the misrepresentation was made for the purpose of defrauding the plaintiff; 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and 5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); accord *Thomas v. Nadel*, 427 d. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Gourdine v. Crews*, 405 Md. 722, 758, 955 A.2d 769, 791 (2008); Sass, 152 Md. App. at 429, 832 A.2d at 260.

62.        The defendants made a false representation to the plaintiffs by intentionally withholding information about the true purpose of the rehabilitation projects, namely, the conversion of the properties into "group homes."

63.        During initial discussions, the defendants, through their agent William Shockey, intentionally failed to disclose the crucial information that the rehabilitation projects were intended for use as "group homes."

64.     The falsity of the representation was either known to the defendants or made with reckless indifference as to its truth. The intentional nondisclosure and failure to provide complete and accurate information demonstrate the defendants' knowledge or reckless disregard for the truth.

65.        The misrepresentation was made for the purpose of defrauding the plaintiffs. The intentional withholding of material information during negotiations supports the inference that the defendants intended to deceive the plaintiffs.

66.     The plaintiffs, including Mr. Butler, relied on the intentional misrepresentation, and they rely on the information provided during negotiations. For example,  Mr. Butler commenced permit expediting work promptly after the fee agreement was settled, operating under the belief that the rehabilitation projects were conventional residential endeavors. The intentional nondisclosure undermined the foundation of trust upon which the contractual relationship was established.

67.        The plaintiffs suffered compensable injury, including financial losses, reputational damage, and undue strain on business operations, as a direct result of the intentional misrepresentation made by the defendants.

68.        Despite Mr. Butler's successful completion of the permit expediting services, the intentional nondisclosure of the true nature of the projects and the defendants' uncooperative

behavior resulted in financial losses, reputational damage, and undue strain on Mr. Butler's business.

69.     Plaintiffs have been damaged in the amount to be proven at trial as a result of the Defendants' Fraudulent Misrepresentation.

70.     Plaintiffs' damages are ongoing and increasing as a result of Defendants' Fraudulent Misrepresentation.

## COUNT IV

### (Fraudulent Misrepresentation)

### Against all Defendants

71.     Plaintiffs hereby re-allege paragraphs 1 through 31 as if specifically set forth.

72.     In Maryland, to state a claim for fraudulent concealment, the plaintiff must allege: (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010); *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 138, 916 A.2d 257, 274 (2007); *Green v. H & R Block, Inc.*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999).

73.     The defendants had a duty to disclose material facts to the plaintiffs, notably Mr. Butler, pertaining to the true purpose of the rehabilitation projects – specifically, the intent to convert the properties into "group homes."

74.     Despite this duty, the defendants, represented by William Shockey, deliberately chose not to disclose crucial information about the nature of the rehabilitation projects during initial discussions and negotiations.

13

75.     The defendants failed to disclose a material fact, specifically the true purpose of the rehabilitation projects, intentionally keeping information that would significantly affect the scope and nature of the permit expediting services sought.

76.     The intentional nondisclosure of the actual purpose of the projects during negotiations amounted to a failure to share vital information that would have influenced the plaintiffs' decision-making.

77.     The defendants intended to defraud or deceive the plaintiffs by purposefully concealing material information about the true nature of the rehabilitation projects.

78.     The intentional withholding of information regarding the projects being intended for use as "group homes" strongly suggests an intention to defraud or deceive the plaintiffs, particularly Mr. Butler, who relied on the defendants' representations during negotiations.

79.     The plaintiffs, including Mr. Butler, took action in justifiable reliance on the concealed information, as the intentional withholding significantly influenced the plaintiffs' understanding of the permit expediting services.

80.     For instance, Mr. Butler initiated permit expediting work promptly after the fee agreement was settled, operating under the belief that the rehabilitation projects were standard residential endeavors. The intentional concealment eroded the trust upon which the contractual relationship was built.

81.     The plaintiffs suffered damages due to the defendants' concealment, encompassing financial losses, reputational harm, and operational strain on business activities.

82.     Plaintiffs have been damaged in the amount to be proven at trial as a result of the Defendants' Fraudulent Concealment.

## COUNT V

### (civil conspiracy)

### Against all Defendants

83.     Plaintiffs hereby re-allege paragraphs 1 through 31 as if specifically set forth.

84.     A claim of civil conspiracy requires proof of three elements: (1) "a confederation of two or more persons by agreement or understanding"; (2) "some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal"; and (3) "actual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, *397* Md. 108, 154 (2007).

85.     Micheal Rothstein and Custom Construction, along with their agent William Shockey, formed a confederation by agreeing or understanding to intentionally withhold crucial information about the true nature of the rehabilitation projects. This confederation is evident in the intentional nondisclosure of the primary purpose of the projects – converting properties into "group homes" – during initial discussions and negotiations.

86.     The defendants engaged in an unlawful or tortious act by intentionally withholding material information during negotiations. This act was done in furtherance of the conspiracy, influencing the plaintiffs' understanding and leading to the completion of permit expediting services under false pretenses.

87.     Kelli Shockey, an agent of the defendants, initiated work beyond the permitted scope, leading to a "cease and desist" order. This act was unlawful and done in furtherance of the conspiracy, as it influenced the plaintiffs, including Mr. Butler, to act based on incomplete and misleading information.

15

88.    The intentional actions taken by the defendants, as part of the conspiracy, resulted in actual legal damage to the plaintiffs. Micheal Rothstein and Custom Construction's deceptive conduct caused financial losses, reputational harm, and operational strain on business activities for the plaintiffs.

## COUNT VI

### (Tortious Interference with Prospective Advantage)

### Against all Defendants

89.    Plaintiffs hereby re-allege paragraphs 1 through 31 as if specifically set forth.

90.    Under Maryland law, the elements of tortious interference with prospective advantage are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff[s] in [their] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Carter v. Aramark Sports and Entm't Servs., Inc.*, 153 Md. App. 210, 240 (2003) (internal quotations omitted), cert. denied, 380 Md. 231 (2004).

91.    The defendants intentionally engaged in acts that were calculated to cause damage to the plaintiffs, Mr. Butler and Permits Express USA LLC. This intention is demonstrated by their intentional withholding of material information about the true nature of the rehabilitation projects during negotiations.

92.    Micheal Rothstein, Custom Construction, and their agent, William Shockey, intentionally withheld information about the projects being intended for use as "group homes," thereby engaging in intentional and willful acts.

93.    The intentional and willful acts of the defendants were calculated to cause damage to the plaintiffs, particularly to Mr. Butler's lawful business, which involved providing permit expediting services. The intentional nondisclosure of crucial information impacted the nature and scope of the permit expediting services sought.

94.     The defendants engaged in intentional and willful acts with the unlawful purpose of causing damage and loss to the plaintiffs. The intentional nondisclosure and the subsequent issues arising from unauthorized work demonstrate malice, as there was no right or justifiable cause for the defendants' actions.

95.     The intentional and willful acts, calculated to cause damage, resulted in actual damage and loss to the plaintiffs. This includes financial losses, reputational damage, and operational strain on business activities.

96.     For example: Despite the successful completion of permit expediting services, the intentional nondisclosure of the true nature of the projects and the subsequent issues caused actual damage and loss to Mr. Butler and Permits Express USA LLC, including financial losses and reputational damage.

## PRAYER AND RELIEF

WHEREFORE PLAINTIFFS pray that;

1.     Defendants be ordered to pay compensatory damages in amount to be determined at trial.

2.     Defendants be ordered to pay Punitive damages in amount to be determined at trial.

3.     Defendants be ordered to pay prejudgment interest as allowed by law.

4.     Defendants be ordered to pay the Plaintiffs' reasonable attorneys' fees and costs including expert witness incurred in bringing this civil action pursuant to the contract agreement and as allowed by applicable laws.

5.     Defendants be ordered to pay the cost of this suit; and

17

6.          For such other and further relief as the court may deem just and proper.


## 6. JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


## 7. RESERVATION OF RIGHTS

Plaintiffs reserve their rights to further amend this Complaint, upon completion of their investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

**Dated; December_____2023.**


Respectively Submitted by;

18